# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RICHARD LEE PAGE,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　Plaintiff,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　) 　Case No. CIV-17-98-SM
　　　　　　　　　　　　　　　　　)
COMMISSIONER OF SOCIAL　　　 )
SECURITY ADMINISTRATION,　　 )
　　　　　　　　　　　　　　　　　)
　　Defendant.

## MEMORANDUM OPINION AND ORDER

Richard Lee Page (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 14, 18.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

I. **Administrative determination.**

   A. **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

   C. **Relevant findings.**

The Administrative Law Judge (ALJ) assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met his

burden of proof. AR 11-23; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by obesity, second, by diabetes mellitus, third, by peripheral neuropathy, fourth, by osteoarthritis, fifth, by depression, and sixth, by a generalized anxiety disorder with panic episodes;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform light work, with some limitations;

(4) could not perform his past relevant work;

(5) could perform jobs existing in significant numbers in the national economy, namely, order clerk, file clerk, parts order clerk, truck broker and dispatcher, mainline dispatcher, appointment clerk, hospital admissions clerks, and title clerk; so, he

(6) had not been under a disability, as defined in the Social Security Act, from April 11, 2013 through November 2, 2015.

AR 13-23.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review the ALJ's decision. *Id.* at 1-5. So, the ALJ's decision is the

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's

4

decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Plaintiff's claims of error.

Plaintiff argues the ALJ failed to properly (1) "evaluate Plaintiff's credibility"; and (2) "assess the Plaintiff's RFC and his finding is not supported by substantial evidence but is legal error." Doc. 23, at 8, 14.

### C. Analysis.

#### 1. Substantial evidence supports the ALJ's credibility determination.

In reviewing an ALJ's credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of HHS*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

5

guise of findings." *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). So long as he sets forth the specific evidence on which he relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001); *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In making a finding about credibility, the ALJ need not totally accept or totally reject the individual's statements. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).[3]

The Tenth Circuit has set forth the framework for analyzing evidence of subjective symptoms. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain). The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based upon all objective and subjective evidence. *See*

---

[3] On March 16, 2016 (after the Commissioner's decision became final), SSR 16-3p superseded SSR 96-7p. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). SSR 16-3p does not appear to be a policy change but, rather, a clarification.

6

*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

In the final step, the ALJ should consider the following factors: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston*, 838 at 1132; s*ee* 20 C.F.R. §§ 404.1529(a) ("In determining whether you are disabled, we consider all of your symptoms, include pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); 416.929(a) (same); *see also* SSR 16-3p, 2016 WL 1119029, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence.").

The ALJ summarized Plaintiff's testimony. AR 16-17. The court agrees with the Commissioner that the ALJ's noting Plaintiff "was unable to lift a backpack containing 8 gallons of water, although he testified that he is

able to carry a gallon of milk" was not a "mischaracteriz[ation]" as Plaintiff alleges. *Id.* at 16, Doc. 27, at 14 n.8; Doc. 23, at 10. The ALJ was summarizing Plaintiff's testimony.

Plaintiff takes issue with the ALJ's consideration of his reported activities of daily living when contrasted with his testimony. Doc. 23, at 10-12 (challenging the ALJ's conclusions regarding Plaintiff's reported exercising, cooking, and driving). Clearly, the ALJ was correct to consider Plaintiff's reported activities and to compare them to the medical record and Plaintiff's testimony. *See Huston*, 838 F.3d at 1132.

The ALJ included additional limitations to account for Plaintiff's diabetes and related neuropathy (avoiding "exposure to hazards, machinery, and unprotected heights, and that the [Plaintiff] can occasionally balance"). AR 18. The ALJ was correct to consider "Plaintiff's two-year gap in treatment," when reviewing the frequency of medical contacts. Doc. 23, at 11; AR 17, 18. The ALJ noted Plaintiff continued to be seen for "diabetes checks and medication refills" during this time. AR 18. Plaintiff is correct his lack of insurance and his inability to afford medical treatment may be a justifiable reason for not taking medications or for noncompliance with medical treatment. Here the ALJ did not rely on not seeking treatment from Dr. Mark Winchester as a reason to deny benefits. He noted Plaintiff

8

reported to Dr. Winchester in June 2013 "he had been going to mary mahoney but it is a drive for him." *Id*. at 570.

Here, the ALJ carefully considered each of Plaintiff's alleged limitations, examined the medical record evidence, and concluded Plaintiff's testimony regarding his "extreme limitations" was not credible. *Id*. at 17-19. Plaintiff maintains he exercises only due to physicians' instructions to do so. Doc. 22, at 11; AR 498-500. The ALJ recognized this, but noted Plaintiff's regimen, which includes daily pushups and squats and frequent weightlifting, in discounting Plaintiff's testimony. AR 17, 370, 432. Despite testifying he "can't feel his feet," *id*. at 40, 54, Plaintiff reported he could drive 130 miles at least weekly. *Id*. at 469, 598. He also reported he stopped going to Mary Mahoney Memorial Health Center because it was "a drive," yet reported there for prescription refills and diabetes maintenance during the two-year gap in "significant treatment." *Id*. at 18.

As to the limitations caused by Plaintiff's back pain and arthritis, the ALJ noted in June, 2013 that Plaintiff reported "no back pain, no joint pain, no joint stiffness, and no myalgias." *Id*. He had "no gait abnormality, no insomnia, no anxiety" and denied depression. *Id*. A July 2013 visit was similar, and Plaintiff reported no weakness. *Id*. Then during an August 27, 2013 visit to APRN Eunice Simon, Plaintiff alleged to have arthritis in his

9

hands, hips, ankles, knees, and back with a damaged disc. *Id.* The ALJ noted no objective testing took place and the nurse appeared to recite Plaintiff's allegations. *Id.*

Plaintiff testified he "stay[s] out of the kitchen," *id.* at 41, *see id.* at 50, no longer cooked or used knives because he had cut off the end of a finger. *Id.* at 41, 40, 51. He also stated he could not feel heat and his hands locked up. *Id.* at 41. The ALJ questioned the lack of medical evidence supported his finger injury, and noted Plaintiff reported in September 2014 that being a "good cook" was one of his abilities. *Id.* at 469, 18.

Plaintiff takes issue with the ALJ's noting Plaintiff "refuses narcotic medication." Doc. 23, at 11. The ALJ also noted Plaintiff relied on cognitive behavior therapy and that Plaintiff felt his panic attacks and depression were "regulated by medication and therapy." AR 17. The ALJ did not question Plaintiff's stated reasoning for not taking narcotic medication. *See id.* at 46, 17.

The ALJ did not simply consider "snippets" of the medical record. *See* Doc. 23, at 12. He detailed Plaintiff's medical visits and gave great weight to the physical consultative examiner James L. Burke, DO. AR 20; *see id.* at 17- 20. He found Dr. Burke opined Plaintiff could "effectively grasp tools," had "no sensory loss in the first three fingers" of either hand, "had adequate finger to

thumb opposition," and his "grip strength was . . . 5/5." *Id.* at 20, 418-21. Dr. Burke found "normal hand skills, normal fine tactile manipulation of objects," and Plaintiff's "range of motion of the axial spine was within normal limits, although there were subjective complaints of pain and evidence of muscle spasm." *Id.* at 20. Plaintiff "ambulated in a stable and safe gait at an appropriate speed without the use of any assistive devices." *Id.* The ALJ also determined that two consultative examiners' opinions were inconsistent with the medical evidence of record, noting Plaintiff required greater limitations than those examiners opined. *Id.* at 18-19. Plaintiff also reported a stable mood, and the medical evidence shows he responded well to medications for his panic attacks and depression. *Id.* at 19-20, 501, 555, 43.

"The [agency's] regulations require that an ALJ's RFC [finding] be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citing 20 C.F.R. §§ 416.929, 416.945). Noting "the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC," the *Poppa* Court recognized that "the ALJ's credibility and RFC determinations are inherently intertwined." *Id.* at 1171.

The above findings, the ALJ's consideration of the "entire record," and the medical evidence of record provide substantial evidence supporting the

11

ALJ's credibility determination. *See also Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (explaining "[w]here, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word") (citation and internal alterations omitted); *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) ("[S]ubstantial evidence supports the determination that Mr. Razo's pain was not disabling.") (citing *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain.")).

### 2. Substantial evidence supports the RFC assessment and the ALJ committed no legal error in formulating it.

Plaintiff maintains the ALJ did not incorporate limitations based upon any of his severe impairments. Doc. 23, at 14. As the Commissioner notes, the ALJ limited Plaintiff to light work with additional restrictions. Doc. 27, at 9; AR 16. Plaintiff points mostly to his subjective reports of worsening pain and to some objective medical evidence for support. Doc. 23, at 14-15. He points to no medical evidence supporting further functional limitations.

Plaintiff also cites to the ALJ's hypothetical questions to the vocational expert that included "additional breaks in excess of standard breaks," to which the vocational expert responded would eliminate employment. *See id*. at 16. But the ALJ was not required to accept the vocational expert's answer to

hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995); *Johnson v. Colvin*, 640 F. App'x 770, 776 (10th Cir. 2016) ("The ALJ is required to include in a hypothetical inquiry to the VE all and only those impairments the ALJ properly finds borne out by the evidentiary record." (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)). Plaintiff fails to demonstrate reversible error.

## III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 4th day of January, 2018.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE